[No. 14728.    Department One.    July 29, 1918.]

C. J. CASSUTT et al., Appellants, v. MILLER COMPANY, Respondent, A. C. PETRIDGE, Defendant.[1]

PARTNERSHIP—CONTRACT—EVIDENCE—QUESTION FOR JURY. In an action against a company in the automobile business and an individual demonstrating a car, for personal injuries sustained through negligent driving, there was sufficient evidence that the defendants were partners in the operation of the car, where it appears that the company contributed to the enterprise by furnishing a place of business and advertising and printed matter, and the other contributed his time and personal and other expenses, the profits from the sale of cars being divided.

TRIAL—MOTION FOR JUDGMENT—NEW TRIAL. Where one of two defendants jointly liable had been improperly dismissed, upon verdict against the other, there cannot be a judgment against such defendant without verdict, but only a new trial.

[1]Reported in 174 Pac. 433.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 19, 1917, in favor of the defendant, upon granting a nonsuit, in an action in tort, after a trial to a jury. Reversed.

*Elias A. Wright* and *Sam A. Wright,* for appellants.
*George C. Congdon,* for respondent.

MITCHELL, J.—This action was instituted by appellants, husband and wife, to recover for personal injuries to Mrs. Cassutt and damages to their automobile, as the result of an automobile collision caused by the alleged negligence of George W. Miller Company, a corporation, respondent, and A. C. Petridge, defendant. A jury was impaneled in the cause, and, at the conclusion of all the testimony, the court granted a nonsuit in favor of respondent. There was a verdict and judgment against defendant Petridge. Cassutt and wife appeal.

Appellants contend, and respondent agrees, that the main question to be considered here is the propriety of the nonsuit, narrowed to the inquiry if the relations between respondent and Petridge were such as to make them jointly liable. The claim of appellants, in their complaint and in all other ways, is that respondent and Petridge are jointly liable, although Petridge was driving the car at the time of the collision, respondent not being present. Respondent claims Petridge was engaged in an independent business. The full ruling of the court on the motion for the nonsuit was as follows:

"In the matter of a contract a person might be bound to an apparent relationship existing between the parties, but, in cases of this character, a different rule applies, and we have a right to go into the real reason. It appears to me, from the testimony in this case, that this was an independent business that Mr.

Petridge was engaged in, and he had full supervision of it, and was not in the partnership business. I will dismiss the case as to George W. Miller Co."

Thus, it appears that respondent was dismissed from the case for the sole reason expressed.

For the purposes of the case, as it stands here, there is evidence that the car driven by Petridge at the time of the accident belonged to Jack Lannon who called up George W. Miller Company on the phone and told the company to send some one—that he had a car for sale. Complying, Petridge came and got the car, taking a "sale agreement" signed by Lannon on a regular business form used by respondent, the agreement stating, *inter alia:*

"In consideration of the services to be performed by the George W. Miller Co. in endeavoring to effect a sale of the Lozier motor car (No. ....) I do hereby give and grant the said George W. Miller Co. . . . the right to sell the said motor car . . .

"I also grant the George W. Miller Co. the privilege of demonstrating said car whenever, according to their best judgment, it would have a tendency to further said sale, etc."

Respondent has a place of business consisting of several departments, as testified to by its present secretary-treasurer, George W. Miller, as follows:

"Mr. Petridge at that time was renting space from me, and selling second-hand automobiles. I have a separate kind of business up there. I wreck automobiles for their parts, and I rented some of my space up there to Mr. Petridge so that he could sell cars out of my room, building, over our name. The agreement was that for the space he had in there he was to pay us half of the profit. . . . Mr. Petridge paid his own expenses up there, and, for half the profits he was making,—he was to give us half of the profits."

On cross-examination, Mr. Miller further testified as follows:

"Q. The expenses Mr. Petridge paid, he paid the expenses, and then the profits over and above that were divided between your company and Mr. Petridge? A. That is the agreement we had, yes, sir. Q. In other words, whatever the profit was over and above the expenses in the business, he turned it over to the company? A. He turned in half of it. Q. The rent item, of course, was all figured in the expense? A. No; we didn't charge him any rent. Q. I thought you said you charged him rent? A. No; the profits were to offset the rent. Q. Then he didn't have any rent to pay? A. No; without he made profits."

And again, as to the sale contract being in the name of the corporation, Mr. Miller said:

"Q. Under these contracts you controlled the disposition of this car, Mr. Miller, your company? A. I would not say that we did. I suppose we could have controlled it, but I left that all entirely to Mr. Petridge's hands. He was running that department. Q. You left it to him, because he was running that department? A. Yes."

W. H. Sanders, who was secretary for the corporation at the time the Lannon car was placed there under the sale agreement, testified:

"Q. Do you know what the arrangement was with Mr. Petridge and George W. Miller Co. on those cars that came in for sale? A. Yes, sir, I know about that. Q. What was it? A. Mr. Petridge was to handle that part of that department, and make all sales, handle the cars, and divide the profits with the firm. . . . Q. What did Mr. Petridge do with those cars? Did he have charge of that department, and drive those cars when he saw fit? A. He demonstrated the cars, yes, sir. Q. He had charge of them, and did as he saw fit, sold them and divided the profits? A. He had the disposition of the sale of them, and demonstration of the cars. . . . Q. Did he pay his own expenses, or did George W. Miller Co. pay his expenses? A. He paid his own expenses, yes sir. That came out of the profits of the sale, yes, sir."

Defendant Petridge, referring to the sale agreement, said:

"Q. Why did you make it in the George W. Miller Co.'s name rather than your own? A. We were doing it for the publicity of George W. Miller Co. It was the advertising of George W. Miller Co. I didn't have any right to use my name on it as long as I was with the Miller outfit up there."

And referring to his arrangements with respondent, the same witness said:

"Q. Now there has been some testimony here as to your connection with the George W. Miller Co.; kindly tell the jury what that connection is? A. I made arrangements with Mr. Miller to rent space off of him by bringing my cars, whatever cars I got, and selling them there, and using his name and advertising, and dividing the profits I made on the cars. Q. Who were paying the expenses of your venture? A. I was paying all expenses, and everything. Q. Was there any rental for the space, or was the rental supposed to come from the profits? A. No. The only rental was paid out of what profits I made on the sale of cars. If I didn't sell any cars, there wasn't any rental."

Counsel discuss the subject of partnership and somewhat provoke us to define it. This we refrain from attempting, abstractly, for a definition which seeks to accurately include and exclude is fraught with risk, and its complete accomplishment most elusive of power to express. Besides, there is no occasion for such attempt here, since respondent bore a part of the burden of the business by furnishing the place at which it was transacted and the advertising and printed matter used in it, while defendant Petridge contributed his time and personal and other expenses—the profits being divided. It is quite sufficient to observe that one who thus contributes to a business with another for the purpose of procuring a portion of anticipated profits may not be heard to claim a want of liability

growing out of that venture, so far as the relations with that other are concerned. The case was one for the jury.

Upon return of the verdict against Petridge, appellants moved for judgment against respondent also, to whom, as already seen, nonsuit had been granted. This motion was, before judgment, properly denied. Appellants' idea is that, since there was a finding against Petridge, and because the evidence showed respondent was jointly liable with Petridge, therefore the court should give judgment against respondent also. Such proposed course overlooks the fact that, whatever impression appellants entertained as to proof of liability of respondent, the court had already decided it was insufficient to hold respondent, thus presenting a situation, in this case, wherein appellants were limited and relegated to a motion for a new trial, which was subsequently presented without success. The trial court properly held there should be no judgment against respondent in the absence of a verdict against it, to be arrived at only after the jury had heard respondent.

Reversed, and new trial ordered as to respondent.

MAIN, C. J., PARKER, TOLMAN, and FULLERTON, JJ., concur.